# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DEWEY WEAVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civ. Action No. 3:09-CV-380-M |
| | § | |
| TEXAS CAPITAL BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## <u>Memorandum Opinion and Order</u>

Before the Court is the Motion to Transfer filed by Defendant Texas Capital Bank, N.A. ("Defendant" or "Texas Capital") [Docket Entry #9]. Having considered the Motion, the parties' briefing, and the applicable law, the Court finds that the Motion should be GRANTED.

Defendant moves the Court to transfer this action to Judge Russell F. Nelms in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, pursuant to 28 U.S.C. §1412, or alternatively, under 28 U.S.C. §1404. Defendant argues that "it would be permissible and justice would be served if this District Court referred this declaratory judgment action to Judge Nelms for resolution under Section 1412." Specifically, Defendant argues that this action is "related to" a prior bankruptcy action, "because 'dischargeability of a particular debt' falls within the definition of a 'core' proceeding under Rule 157(b)(2)(I)."

This case arises from the following facts. On January 16, 2008, SL Management LLC ("SL") filed a bankruptcy petition, under Title 11 of the United States Code, in the Northern District of Texas, Fort Worth Division. The case was assigned to Judge Nelms. Then, on April 9, 2008, Defendant Texas Capital Bank ("Texas Capital"), a creditor in the SL bankruptcy

proceeding, filed an action in Texas state court against Dewey Weaver ("Weaver"), the Plaintiff

in this case, alleging that Weaver executed "a series of Commercial Guarantee agreements" to

"personally guaranty [sic] payment of all amounts" owed by SL.

The state court suit sought to recover on four promissory notes executed to facilitate the

purchase of several tracts of residential property in Tarrant County, Texas.  The suit alleged that,

contemporaneously with SL's execution of each note, Weaver executed a Commercial Guarantee

(the "Weaver Guaranties").  The Weaver Guaranties provided that Weaver "absolutely and

unconditionally guaranteed full and punctual payment and satisfaction of SL[]'s indebtedness to

Plaintiff," and that Texas Capital could enforce the Weaver Guaranties against him without first

exhausting its remedies against SL.

The state court petition further alleged that SL defaulted on the Notes, that Texas Capital

made written demand on Weaver, as guarantor, to pay the Notes, and that Weaver failed to do so,

thereby breaching the Weaver Guaranties.  Texas Capital acknowledges in its petition the

bankruptcy filing by SL, stating that it sought separate relief in the bankruptcy court, including

foreclosing its security interest in the real property securing the promissory notes.  In the state

suit, Texas Capital sought relief only as to Weaver.

On September 2, 2008, Judge Nelms confirmed SL's Plan of Reorganization, and the

bankruptcy action was closed on December 16, 2008.

Weaver failed to answer or otherwise respond to the state court suit, and on December

15, 2008, Texas Capital obtained a default judgment against Weaver.  Texas Capital foreclosed

on its security interest in the real property, sold the property, and obtained an abstract of

judgment against Weaver for the deficiency, plus attorney's fees, costs, and interest.  On

February 25, 2009, Texas Capital initiated proceedings in Louisiana state court to enforce its

Texas judgment against Weaver.  On February 27, 2009, Weaver filed this suit for declaratory judgment, alleging that the default judgment obtained by Texas Capital against Weaver violated the Plan of Reorganization of SL, i.e., that pursuant to the confirmed Plan, the debt of SL to Texas Capital was satisfied, in full, by a conveyance of the security to Texas Capital.[1]

On April 1, 2009, Texas Capital moved to transfer this case to Judge Nelms, contending the claims are core proceedings relating to the SL bankruptcy action and that, under 28 U.S.C. §1412, this Court should therefore refer the case to the bankruptcy court.

The Fifth Circuit addressed the scope of jurisdiction of federal bankruptcy courts in *In re Wood*.[2]  The court first explained that 28 U.S.C. §1334 provides four categories of bankruptcy matters over which a federal district court has jurisdiction:  (1) cases under Title 11; (2) proceedings arising under Title 11; (3) proceedings arising in a case under Title 11; and (4) proceedings related to a case under Title 11.  The court then explained:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. The Act does not define "related" matters… the definition of the Court of Appeals for the Third Circuit appears to have the most support: "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy"… We adopt it as our own.[3]

The court also explained that the procedural statute for bankruptcy jurisdiction, 28 U.S.C. §157, does not confer full judicial power to federal bankruptcy judges in all matters over which federal district courts have jurisdiction under §1334 and Title 11, but instead distinguishes

---

[1] Weaver argues that Texas Capital "is bound by the confirmed Plan to receive the properties in full satisfaction of the debt and therefore no debt was owed to Defendant for which the Plaintiff could be held liable for after the Effective Date of the Plan," in part because Texas Capital did not seek a determination from the bankruptcy court that the value of the properties surrendered under the Plan was less than the amount of the debt owed to Texas Capital.

[2] *In re Wood*, 825 F.2d 90 (5th Cir. 1987).

[3] *Id.* at 93.

between core and non-core proceedings.[4]  Section 157 states that a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

However, bankruptcy judges only have the power to "hear and determine" a matter if it is "under title 11," or is a core proceeding "arising under title 11" or "arising in a case under title 11."[5]  In contrast, if a case is a "non-core proceeding" that is otherwise related to a case under title 11, the bankruptcy judge may hear the proceeding, but in such a proceeding the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court for determination.  The statute also provides a non-exclusive list of what actions qualify as "core" proceedings.[6]

The court in *Wood* explained:

Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.  Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11... The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.[7]

In other words, "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it

---

[4] *Id.* at 95.
[5] 28 U.S.C. §157(b)(1) (2009).
[6] *See id.* at (b)(2).
[7] *Wood*, 825 F.2d at 96-97.

may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding."[8]

While the Fifth Circuit in *Wood* stated that, to ascertain whether a bankruptcy court has jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy case, it subsequently narrowed this standard in post-confirmation cases, i.e., cases that follow confirmation of a reorganization plan.  Under *Wood*, before confirmation of the reorganization plan, bankruptcy jurisdiction will exist if the outcome of the proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.[9]

However, in *In re Craig's Stores of Texas, Inc.*, the Fifth Circuit attached critical significance to the debtor's emergence from bankruptcy protection following confirmation of the reorganization plan, noting that "[n]o longer is expansive bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize."[10]  The court went on to conclude that: "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."[11]

In *Craig's Stores*, the plaintiff (formerly the debtor) had filed a lawsuit in state court, asserting state law claims against the defendant, which arose from a contractual arrangement that began prior to the plaintiff's bankruptcy, which was then assumed as part of the plan and continued in effect after confirmation of the plan.  The plaintiff's alleged damages arose mostly after the plan was confirmed.  The court observed that "[v]iewed from the narrower perspective [of post-confirmation jurisdiction], it is clear that [plaintiff's] claim against the [defendant]

---

[8] *Id.* at 97.
[9] *Id.* at 93.
[10] *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001).
[11] *Id.*

principally dealt with post-confirmation relations between the parties."  The Fifth Circuit further explained that "no facts or law deriving from the reorganization or the plan was necessary to the claim asserted by [plaintiff] against the [defendant]."  The court held that "the state law causes of action asserted by [plaintiff] against the [defendant] *do not bear on the interpretation or execution of the debtor's plan* and therefore do not fall within the bankruptcy court's post-confirmation jurisdiction."[12]

The Fifth Circuit confirmed this approach to post-confirmation jurisdiction in an unpublished opinion, *In re Martinez*.[13] Post-confirmation, the plaintiff (formerly the debtor) sued a creditor in state court, alleging that the creditor had breached the notice provisions of the plan. The creditor removed the action to bankruptcy court, where the court dismissed the suit after interpreting the terms of the plan.  The plaintiff appealed, asserting that the bankruptcy court lacked subject matter jurisdiction over the state court lawsuit.  The Fifth Circuit observed that the bankruptcy court based its jurisdiction on the "arising under title 11" prong of §1334(b), finding that the rights asserted by the plaintiff, if any existed, derived from the Bankruptcy Code, "inasmuch as such rights allegedly arose in a bankruptcy case, pursuant to a plan confirmed by the bankruptcy court."[14]  The Fifth Circuit agreed that the removed case was a core proceeding arising under title 11 and thus was properly before the bankruptcy court, because it necessarily involved an interpretation of whether the confirmed plan required such notice.[15]

In this case, the Complaint states:

---

[12] *Id.* at 391 (emphasis added); *see also Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2205 (June 18, 2009) ("the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"), and *In re Nat'l Benevolent Assoc. of the Christian Church (Disciples of Christ)*, No. 08-50677, 2009 WL 1649485 at *4 (5th Cir. June 11, 2009) ("A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders.").

[13] *In re Martinez*, No. 00-40412, 2000 WL 34508398 at *1 (5th Cir. Oct. 5, 2000).

[14] *Id.*

[15] *Id.* (emphasis added) (citing 28 U.S.C. §1334(b), and *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. ( Matter of Nat'l Gypsum Co.)*, 118 F.3d 1056, 1064 (5th Cir. 1997)).

¶4      Plaintiff seeks a determination under the Federal Declaratory Judgment Act that the Default Judgment obtained by Defendant against Plaintiff was obtained in violation of the confirmed bankruptcy Plan of Reorganization of SL Management LLC ("SL") and all claims against Plaintiff were satisfied in full under the terms of the confirmed plan of reorganization ("Plan").

¶22      Plaintiff would show that pursuant to the confirmed Plan the debt of SL to Defendant was satisfied in full by the return of the properties to Defendant.

¶23      Defendant did not seek any determination from the Bankruptcy Court as required by the Plan that the value of the properties surrendered under the Plan was less than the amount of the debt to Defendant, and therefore Defendant is bound by the confirmed Plan to receive the properties in full satisfaction of the debt and therefore no debt was owed to Defendant for which the Plaintiff could be held liable for after the Effective Date of the Plan.

¶24      Pursuant to 28 U.S.C. §2201 et. seq. Plaintiff seeks a determination that [the] confirmed Plan fully satisfied any debt of SL to Defendant and therefore there was no guaranty debt of Weaver owed at the time of the Judgment, or in the alternative that the Judgment against Weaver has been fully satisfied by the confirmed Plan.

Unlike *Craig's Stores*, the Complaint in this case specifically calls into question certain facts and legal implications of the confirmed reorganization plan.  It simply cannot be said that no facts or law deriving from the plan are necessary to the claim asserted by Plaintiff against the Defendant.  This Court concludes that the allegations and the relief sought in the Complaint require interpretation of the confirmed plan of reorganization in the SL bankruptcy because Plaintiff seeks a declaration that the plan eliminates the Defendant creditor's right to pursue guaranteed debts of SL following confirmation of the plan.[16]  Such a declaration inherently requires

---

[16] Weaver, in his opposition to the Defendant's Motion to Transfer, acknowledges that "[t]he single gist of this litigation is to determine what the Plan of Reorganization means."  *See* Plaintiff's Brief in Support of Response in Opposition to Motion to Transfer at ¶13.  Plaintiff argues that "this Court is more than capable of reading and interpreting the confirmed Plan…the question is nothing more than a contract interpretation questions [sic], between to [sic] non-debtors."  While the Court can hear and determine this matter, the bankruptcy court is undoubtedly in a good position to interpret its own orders.

interpretation of the confirmed plan, and thus falls under the "arising under" prong of bankruptcy jurisdiction.[17]

The Court notes that, unlike the situation in *In Re Martinez*, all parties to this suit were not parties to the SL bankruptcy.  Weaver was not the debtor in the SL bankruptcy; rather, he was a guarantor of certain of the debtor's debts, and Texas Capital was a creditor.  Further, the declaration Weaver seeks evolves from a state court action initiated after SL filed for bankruptcy.  The Court concludes that these facts do not eliminate bankruptcy jurisdiction, since interpretation of the plan confirmed by the bankruptcy court is required.  However, because this suit is between only persons not debtors in the bankruptcy action, and does not affect administration of the SL estate, the Court also finds that it would not be appropriate for the bankruptcy court to enter a final determination in this case.[18]  The Court therefore TRANSFERS this matter to Judge Russell F. Nelms of the United States Bankruptcy Court for the Northern

---

[17] *See also The Nancy Sue Davis Trust v. Davis*, No. C-09-9, 2009 WL 1066996 at *1-2 (S.D. Tex. Apr. 21, 2009).  In *Davis*, the district court considered plaintiff's motion for leave to file a complaint, which was based in part on conduct giving rise to a prior adversary proceeding in the bankruptcy court, to revoke confirmation of the plan because it was allegedly procured by fraud.  The district court transferred the motion to the bankruptcy court, finding it "requires interpretation of the plan, which is a matter 'arising under title 11'."  The plaintiff asked the court to "interpret the Confirmation Order and Plan and determine whether the releases, indemnifications, and exculpations contained therein bar Plaintiff from proceeding."  The court held that the motion was within the core jurisdiction of the bankruptcy court, and was most appropriately resolved by the bankruptcy court.

[18] *See In re Spiers Graff Spiers*, 190 B.R. 1001, 1006 (Bankr. N.D. Ill. 1996).  In *Spiers*, the bankruptcy court explained that its jurisdiction was doubtful over a case where the plaintiff (a former debtor) filed an adversary proceeding following confirmation of the reorganization plan, seeking a declaration as to its effect on a state court suit by a creditor against the debtor's individual general partners.  "The [plaintiff] Debtor claims that [the defendant] was bound by the Plan, that the Plan barred her further collection efforts, and that its partners are no longer personally liable on the notes they signed because her claims were conclusively adjudicated by entry of the confirmation order."  Deeming the general partners the true plaintiffs, the bankruptcy court explained that, generally, bankruptcy courts cannot decide disputes between non-debtors "where the dispute does not involve property of the estate, does not affect administration of the estate, and resolution of the inter-creditor dispute will not affect recovery of creditors under a confirmed plan."  However, the bankruptcy court observed that, where resolution of the dispute "turns on interpretation of the bankruptcy court's orders," the bankruptcy court may retain jurisdiction.  In this case, the declaratory judgment Weaver seeks will turn on interpretation of the bankruptcy court's confirmation order, but it is a dispute between non-debtors that will not affect the debtor's estate.  Even though the bankruptcy court is clearly in the best position to interpret its own orders, the Court declines to transfer this case for final determination in light of the limited jurisdictional nexus between this suit and the SL bankruptcy action.

District of Texas, Fort Worth Division, for him to submit proposed findings of fact and

conclusions of law to be considered by this Court for final disposition of the matter.

SO ORDERED this 23rd day of July, 2009.


BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS