IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEWEY WEAVER, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-380-M |
| | § | |
| TEXAS CAPITAL BANK N.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-Motions for Summary Judgment, the Proposed Findings of Fact and Conclusions of Law with Respect to Cross-Motions for Summary Judgment submitted by United States Bankruptcy Judge Russell F. Nelms [Docket Entry #18], and Defendant's Objections to Judge Nelms' Findings and Conclusions [Docket Entry #19]. For the reasons explained below, Judge Nelms' submission is accepted in part, Plaintiff's Motion for Summary Judgment is **GRANTED** in part, and Defendant's Motion for Summary Judgment is **DENIED**.

I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Dewey Weaver was a member of SL Management, LLC ("SL"), a Louisiana company that bought and sold real estate in Texas. Between October 2004 and September 2006, SL obtained loans from Defendant Texas Capital Bank N.A. ("Texas Capital"), and therefore executed and delivered four promissory notes, totaling $978,719, to Texas Capital. The notes were secured by eleven tracts of land in Tarrant County, Texas. To facilitate the loan transactions, Weaver and his business partner, Walter Dootson, executed and delivered personal guaranties for each of the promissory notes (the "Weaver Guaranties"). The Weaver Guaranties unconditionally committed Weaver and Dootson to fully satisfy SL's debt to Texas Capital.

On January 16, 2008, SL filed a Chapter 11 bankruptcy petition in the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court"). The case was assigned to Judge Nelms. Texas Capital appeared as a creditor in SL's bankruptcy case and filed an unopposed proof of claim for $756,000.

On March 6, 2008, SL filed a plan of reorganization (the "SL Plan"). The SL Plan classified Texas Capital as the Class 10 creditor, and in Section 5.11 provided:

> The Debtor shall sell [Texas Capital's collateral] to The Champions Group, or its designee ("Champions"), pursuant to that certain Motion to Sell ("Sale Motion") filed with the Court on March 6, 2008. It is anticipated that the sale of these properties will occur prior to the Effective Date and that [Texas Capital] will have no remaining claim in Debtor's estate. In the event the Court does not approve the Sale Motion or if any of [Texas Capital's collateral] are not purchased by Champions as required by Sale Motion, the Debtor shall upon the Effective Date surrender all Debtor's interest [in Texas Capital's collateral] to the Class 10 creditor under 11 U.S.C. 1129(b)(2)(iii) *in full satisfaction* of the Class 10 claims. To the extent the Court after notice and hearing determines that the cumulative value of the properties to be surrendered to [Texas Capital] under this Plan is less than the cumulative amount of the Allowed [Texas Capital] Secured Claim, any deficiency shall be treated as a Class 12 claim and paid in accordance with the Class 12 treatment.[1]

The SL Plan also contained the following provision:

> Notwithstanding anything contained herein to the contrary, neither Debtor, Reorganized Debtor, *guarantors of the Debtor*, or any people liable on a debt with the Debtor shall be discharged and released from any liability for claims and debts under this plan, *however, the exclusive remedy for payment of any claim or debt so long as the plan is not in default shall be the plan.*[2]

On September 2, 2008, Judge Nelms confirmed the SL Plan. SL never sold the collateral pursuant to § 5.11 of the SL Plan, and on October 13, 2008, the collateral was deemed surrendered to Texas Capital. Neither party requested a valuation of the collateral by the Bankruptcy Court. On December 1, 2008, Texas Capital foreclosed on the collateral. The foreclosure left a deficiency of $334,986.45, plus various fees, expenses, and interest.

---

[1] SL Plan § 5.11 (emphasis added).
[2] *Id.* § 10.3 (emphasis added).

Meanwhile, on April 8, 2008, while confirmation of the SL Plan was pending, Texas Capital filed an action in Texas state court to enforce the Weaver Guaranties. On December 15, 2008, when Weaver did not answer or otherwise respond, Texas Capital took a default judgment against him for $766,645.79 (the "Default Judgment"), and initiated collection proceedings against Weaver in Louisiana state court.

On February 27, 2009, in response to the Louisiana collection proceeding, Weaver filed this action for declaratory judgment, seeking a determination that the confirmed SL Plan fully satisfied any debt of SL to Texas Capital, and that therefore Weaver did not owe any guaranty debt at the time of the Default Judgment; or, in the alternative, that the Default Judgment was fully satisfied by the SL Plan.

On July 23, 2009, this Court granted Texas Capital's motion to refer this action to Judge Nelms for proposed findings of fact and conclusions of law. On April 8, 2010, Judge Nelms submitted his proposed findings and conclusions on the parties' cross-motions for summary judgment, to which Texas Capital now objects.

## II. STANDARD OF REVIEW AND LEGAL STANDARD

The Court reviews *de novo* the proposed findings of fact and conclusions of law to which Texas Capital objects, making an independent assessment of the issues.[3]

Summary judgment is warranted if the pleadings, discovery, disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[4] A genuine issue of material fact exists when a reasonable jury could find for the non-moving party.[5] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of

---

[3] *See* 28 U.S.C. § 157(c)(1); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 116 (N. D. Tex. 2006) (McBryde, J.).
[4] Fed. R. Civ. P. 56(c).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

material fact.⁶ Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.⁷ In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."⁸ On cross-motions for summary judgment, the court reviews each party's motion independently, construing the evidence and inferences in the light most favorable to the nonmoving party.⁹

III. ANALYSIS

A. First Proposed Conclusion

The Bankruptcy Court's first Proposed Conclusion is that SL's surrender of the collateral was presumed to be in full satisfaction of its debt to Texas Capital, but that Texas Capital is not foreclosed from moving to reopen the bankruptcy case to pursue a deficiency in a valuation hearing. Texas Capital seemingly concedes that SL's debt has been satisfied; however, it argues that SL's surrender of the collateral did not constitute full satisfaction of *Weaver*'s debt to Texas Capital as a personal guarantor for SL.

The Fifth Circuit cases cited by Texas Capital unambiguously hold that a discharge in bankruptcy of a debtor will not affect the liability of a guarantor of that debtor.¹⁰ This holding is premised on section 524(e) of the Bankruptcy Code, which provides, with a minor exception not

---

⁶ *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
⁷ *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
⁸ *Lynch Props.*, 140 F.3d at 625 (citation omitted).
⁹ *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (citing *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994)).
¹⁰ *See NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1266 (5th Cir. 1994); *Matter of Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1351 (5th Cir. 1989); *United States v. Stribling Flying Serv., Inc.*, 734 F.2d 221, 223 (5th Cir. 1984).

applicable here, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."[11]

While the facts of the cases cited by Texas Capital are very similar to those of this case, there is one important difference: The restructuring and payment of the debt under the bankruptcy plans in *NCNB Texas National Bank v. Johnson*, *Matter of Sandy Ridge Development Corp.*, and *United States v. Stribling Flying Services, Inc.* did not purport to satisfy the creditor in full. In other words, the Fifth Circuit held in each of these cases that the creditor could pursue the guarantor for the remainder of the money owed by the debtor, which was not fully paid by the debtor under the bankruptcy plan.[12]

In contrast, § 5.11 of the SL Plan provides that, if the collateral was not sold to a specific third party by a certain time, SL would surrender its interest in the collateral to Texas Capital "in full satisfaction of [Texas Capital's] claims." In effect, the Plan set the default value of the collateral at the full amount of the debt owed.[13] Thus, rather than being *extinguished* by SL's discharge in bankruptcy, Weaver's guaranty obligation has been *satisfied* because Texas Capital is deemed to have been paid in full pursuant to the SL Plan via the surrender of the collateral.

The Court therefore accepts the Bankruptcy Court's first Proposed Conclusion.

---

[11] 11 U.S.C. § 524(e).
[12] *See Johnson*, 11 F.3d at 1266-67 (allowing creditor to pursue guarantors for remaining unpaid balance of a promissory note, which unpaid portion had been rolled into a new promissory note via the bankruptcy reorganization of the debtor); *Sandy Ridge*, 881 F.2d at 1354 (allowing creditor to pursue the guarantors for the remainder of the debt, which became an unsecured claim, after the sale of real estate collateral that constituted the creditors' secured claim); *Stribling*, 734 F.2d at 222-24 (allowing creditor to pursue guarantors for remainder of original debt after corporate debt was reduced and restructured in Chapter 11 reorganization); *cf. R.I.D.C. Indus. Dev. Fund v. Snyder*, 539 F.2d 487, 494 (5th Cir. 1976) (holding, in Chapter XI proceedings held under pre-Code bankruptcy laws, that modifications of corporate debt in bankruptcy arrangements did not affect the responsibility of the corporations' guarantors to make good on the unpaid portion of the guaranteed debts that remained after the arrangement was completed).
[13] *See Sandy Ridge*, 881 F.2d at 1354 (holding that a bankruptcy court has the authority to determine the value of a debtor's property in bankruptcy).

B. Second Proposed Conclusion

The Bankruptcy Court's second Proposed Conclusion is that the SL Plan enjoins Texas Capital from pursuing a collection action against Weaver without first (1) establishing a deficiency via a valuation hearing in the Bankruptcy Court, and (2) Weaver defaulting on his obligation under the SL Plan to pay the deficiency.

Two sections of the SL Plan are relevant here. Section 5.11 provides that, if the proposed sale of the collateral properties falls through, SL will surrender its interest in the collateral to Texas Capital in full satisfaction of Texas Capital's claims. But Section 5.11 goes on to state:

> To the extent the Court after notice and hearing determines that the cumulative value of the properties to be surrendered to Texas under this Plan is less than the cumulative amount of the Allowed Texas Secured Claim, any deficiency shall be treated as a Class 12 claim and paid in accordance with the Class 12 treatment.

Under the SL Plan, Class 12 claims (unsecured creditors) would be paid from contributions to be made by Weaver.[14] The SL Plan also contained the following provision:

> Notwithstanding anything contained herein to the contrary, neither Debtor, Reorganized Debtor, *guarantors of the Debtor,* or any people liable on a debt with the Debtor shall be discharged and released from any liability for claims and debts under this plan, *however, the exclusive remedy for payment of any claim or debt so long as the plan is not in default shall be the plan*.[15]

Texas Capital believes that the cumulative value of the collateral it obtained under the terms of § 5.11 is less than the total amount of debt SL owes to it. The SL Plan contemplates just such a possibility, and sets out a specific mechanism via which such a perceived shortfall could be remedied: Texas Capital may pursue a deficiency claim in a valuation hearing. If the Bankruptcy Court finds at the hearing that the sale of the collateral did not, in fact, satisfy SL's

---

[14] *See* Proposed Facts at 3 (citing SL Plan at § 6.2).
[15] SL Plan at § 10.3 (emphasis added).

debt to Texas Capital in full, the deficit would be treated as an unsecured claim and paid in accordance with the SL Plan's provision for Class 12 claims.[16]

While section 524(e) of the Bankruptcy Code prohibits a debtor's discharge in bankruptcy from affecting the liability of a guarantor, it does not specify the manner in which a creditor may pursue its rights against that guarantor. The SL Plan envisions that the valuation hearing mechanism will be the "exclusive remedy" for payment of any claim or debt, as long as the SL Plan is not in default. The SL Plan does not fall afoul of section 524(e) because § 10.3 explicitly acknowledges that, notwithstanding anything in the SL Plan to the contrary, guarantors of SL are not discharged or released from their liability for claims and debts under the SL Plan. Rather, the Plan simply establishes the manner in which such claims against guarantors must first be pursued.

Texas Capital does not cite to any cases holding that a bankruptcy court does *not* have the authority to bind a creditor to first seek payment from a guarantor under the bankruptcy plan, before pursuing a separate collection action. In fact, the Northern District of Texas bankruptcy cases Texas Capital cites *support* the conclusion that the Bankruptcy Court has the authority to direct recovery first through the SL Plan process, leaving Texas Capital free to pursue court action against Weaver if Weaver does not pay any deficiencies as contemplated by the SL Plan. In *In re Bernhard Steiner Pianos USA, Inc.*,[17] the court held, in interpreting a bankruptcy plan provision nearly identical to § 10.3 of the SL Plan, that a bankruptcy court has jurisdiction to issue a post-confirmation stay between creditors and a guarantor while the debtor attempts to pay its debts under the bankruptcy plan. The *Bernhard Steiner* court noted:

> Paragraph 10.3 specifically states that guarantors are not discharged or released from any liability under the plan. Therefore, on its face, the Plan does not purport

---

[16] *See* SL Plan at § 5.11.
[17] 292 B.R. 109 (Bankr. N.D. Tex. 2002).

to grant a release for third parties, such as [guarantor]. Further, nothing in ¶ 10.3 affects [guarantor's] ultimate liability under any guaranty agreement. Instead, ¶ 10.3 merely controls the timing of when a claim, if any, against [guarantor] can be brought."[18]

The court in *Bernhard Steiner* relied on *In re Seatco, Inc.*,[19] which held that section 524(e) of the Bankruptcy Code was not violated by a provision in a bankruptcy plan, very similar to § 10.3 of the SL Plan, that imposed a temporary injunction on a creditor's collection efforts against a guarantor while the debtor remained in compliance with its obligations under the bankruptcy plan.[20] The court stated in *Seatco*:

> The Court disagrees that the temporary injunction proposed in the Plan affects [guarantor's] liability to [creditor] on the Guaranty. While the Plan, if confirmed, will temporarily enjoin [creditor] from pursuing [guarantor] for those sums being paid to it under the Plan, [guarantor's] *liability* to [creditor] on the Guaranty is not affected. If the Reorganized Debtor defaults on the Plan after notice and an opportunity to cure, the temporary injunction terminates without further order of the Court and [creditor] can pursue [guarantor] on the Guaranty for any amounts owing to it. . . . Section 11.04 of the Plan does not violate section 524(e) of the Code.[21]

The court also held in *Seatco* that a bankruptcy court has jurisdiction to issue such a temporary injunction.[22]

These precedents support the conclusion that SL's bankruptcy plan validly enjoins Texas Capital from pursuing a collection action against Weaver without first following the procedures set out in the SL Plan itself. SL was not, as Texas Capital claims, in default under the SL Plan by failing to sell the collateral to the Champions Group. It complied with the SL Plan by

---

[18] *Id.* at 116.
[19] 257 B.R. 469 (Bankr. N.D. Tex. 2001),
[20] 257 B.R. 469, 474-75 (Bankr. N.D. Tex. 2001).
[21] *Id.* at 475 (emphasis original).
[22] *Id.* at 476.

surrendering its interest in this collateral to Texas Capital.[23]  The Court therefore accepts the Bankruptcy Court's second Proposed Conclusion.[24]

C. Third Proposed Conclusion

Texas Capital argues that the issue of Weaver's liability for the deficiency alleged by Texas Capital is the subject of a final order issued by a Texas state court, which should be given preclusive effect despite the fact that Texas Capital pursued the Default Judgment in violation of the Bankruptcy Court's final order.  The Bankruptcy Court's conclusion is that its order confirming the SL Plan was itself res judicata to the Default Judgment, precluding Texas Capital from re-litigating the issue of SL's debt, and Weaver's liability on that debt, to Texas Capital.

Where a second court does not give preclusive effect to the earlier judgment of another court, and the claim or issue then comes before a third court, the governing rule is quite clear: the third court must give res judicata effect to the last previous judgment entered.[25]  This is known as the rule of "last in time," and it applies regardless of the reason why the second court did not give preclusive effect to the judgment of the first court.[26]  If Weaver believes that the Texas state court erred in not giving res judicata effect to the Bankruptcy Court's judgment, the proper action is to appeal the state court's decision, not to collaterally attack it here.[27]

In this case, the application of the "last in time" rule is straightforward.  The Texas state court entered its Default Judgment on December 15, 2008, several months after the September 2,

---

[23] *See* SL Plan § 5.11.
[24] Presumably, Texas Capital does not object to the portion of Judge Nelms' First Proposed Conclusion stating that Texas Capital is not foreclosed from moving to reopen the bankruptcy case to seek a deficiency claim in a valuation hearing.
[25] *See Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 75-78 (1939); *Americana Fabrics, Inc. v. L&L Textiles, Inc.*, 754 F.2d 1524, 1529-30 (9th Cir. 1985) (citing, *inter alia*, 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, Jurisdiction § 4404 at 26 (1981); Ginsburg, *Default Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Default Judgments*, 82 Harv. L. Rev. 798 (1969)); *Reimer v. Smith*, 663 F.2d 1316, 1327 (5th Cir. 1981) (citations omitted).
[26] *See Americana Fabrics*, 754 F.2d at 1529.
[27] *See Treinies*, 308 U.S. at 77-78; *Miller v. Menihard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) (holding that, "[e]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment").

2008, order entered by Judge Nelms confirming the SL Plan. It follows, therefore, that this Court must give res judicata effect to the Default Judgment, which is claim-preclusive as to this action.[28] The Court therefore rejects the Bankruptcy Court's third Proposed Conclusion that Weaver is not barred by res judicata from contesting his liability under the Weaver Guaranties.

Given the Texas state court's finding that Weaver is liable to Texas Capital under the Weaver Guaranties, the Court cannot declare that Weaver did not owe any guaranty debt at the time of the Default Judgment.[29] To do so, and render summary judgment for Weaver on his claim, would directly contravene the state court's Default Judgment.

However, Weaver's complaint requests, in the alternative, a declaration that the Default Judgment has been fully satisfied by the SL Plan. In light of the Court's acceptance of the Bankruptcy Court's first two Proposed Conclusions, this alternative relief is GRANTED. If Texas Capital believes that the sale of SL's collateral did not fully satisfy SL's debt, it may move to reopen the bankruptcy case to seek a deficiency claim in a valuation hearing. If, after such a hearing, the Bankruptcy Court determines that the cumulative value of the collateral is less than the cumulative amount of SL's debt to Texas Capital, and if Weaver defaults on his obligation to pay this deficiency as a Class 12 claim, Texas Capital may pursue a separate collection action against Weaver.

---

[28] Res judicata encompasses two subsidiary doctrines, claim preclusion and issue preclusion. Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

[29] "The [second decision] is not binding because it is correct; it is binding because it is last." *Americana Fabrics,* 754 F.2d at 1530.

D. Fourth Proposed Conclusion

The result discussed above is not precluded by Texas Capital's final argument that the *Rooker-Feldman* doctrine precludes Weaver from challenging the Default Judgment before this Court.

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[30] Thus, a losing party may not seek what amounts to appellate review of a state court judgment in a federal district court by arguing that the state court judgment violates the losing party's federal rights.[31]

Since *District of Columbia Court of Appeals v. Feldman*,[32] one of the two cases for which the *Rooker-Feldman* doctrine was named, the Supreme Court has never applied the doctrine to dismiss an action for want of jurisdiction.[33] Rather, the Court has cabined the doctrine to the narrow facts of its two namesake cases. For example, in *Feldman*, the Supreme Court endeavored to separate elements of the complaint that failed the jurisdictional threshold from those that did not. The plaintiffs in that case argued that the District of Columbia Court of Appeals acted arbitrarily in refusing to waive a certain requirement for sitting for the District of Columbia bar exam. The Court held that, while the plaintiffs could not seek review of the state court's application of the rules to their individualized cases, they could still maintain a claim that the bar admission rule itself was unconstitutional.[34]

The holding in *Feldman* leads to the conclusion that the *Rooker-Feldman* doctrine does not preclude a state-court loser from litigating an independent claim in federal court, even if

---

[30] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).
[31] *See Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).
[32] 460 U.S. 462 (1983).
[33] *Exxon Mobil*, 544 U.S. at 287.
[34] *Feldman*, 460 U.S. at 486-87.

success on that claim would deny a legal conclusion previously reached by a state court.[35] The *Rooker-Feldman* doctrine is thus not implicated here. Weaver does not ask this Court to review or set aside the Default Judgment, nor did the Texas state court consider the issues that this Court is asked to decide. Rather, Weaver brings an independent claim for a declaratory judgment interpreting the SL Plan. The fact that success on the merits here would undercut the state court Default Judgment is not a jurisdictional bar to his claim.[36]

The Court therefore accepts the Bankruptcy Court's fourth Proposed Conclusion.

## IV. CONCLUSION

For the reasons stated above, the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law are accepted in part. Plaintiff's Motion for Summary Judgment is **GRANTED** in part and Defendant's Motion for Summary Judgment is **DENIED**. The Court will enter a Final Judgment in a separate order.

**SO ORDERED.**

August 5, 2010.

*[signature]*
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[35] *In re Knezek*, 2010 U.S. App. LEXIS 5409, at *5-6 (5th Cir. Mar. 11, 2010) (citing *Exxon Mobil*, 544 U.S. at 293)).

[36] The Fifth Circuit cases cited by Texas Capital in its Brief are either not to the contrary, or are inapposite. *See Union Planters Bank N.A. v. Salih*, 369 F.3d 457 (5th Cir. 2004) (applying *Rooker-Feldman* to vacate a federal court's issuance of a permanent injunction of a state court's discovery order); *In re Erlewine*, 349 F.3d 205, 210 (5th Cir. 2003) (holding that *Rooker-Feldman* is inapplicable where the state court judgment would not be given preclusive effect because the federal plaintiff was not a party to the prior state action).